# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 9245 | **DATE** | 3/20/2013 |
| **CASE TITLE** | Lee vs. Chicago Youth Centers et al. | | |

**DOCKET ENTRY TEXT**

Motion by defendants J. Harry Wells and Chicago Youth Centers to dismiss pursuant to Rule 12(b)(6) (#14) is denied. See statement section of this order for details. Motion by plaintiff John W. Lee, III for leave to file amended complaint (#21) is granted. Defendants shall answer or otherwise plead to the amended complaint by 4/4/2013. Scheduling conference is set for 4/18/2013 at 8:30 a.m.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Plaintiff John W. Lee, III has filed a four-count complaint alleging that his former employer, defendant Chicago Youth Centers ("CYC"), and its Chief Executive Officer, defendant J. Harry Wells, discriminated against him based on his race in violation of 42 U.S.C. § 1981 by terminating his employment and reducing his annual pension by approximately 38 percent (Counts I and II).[1] Plaintiff also alleges state law claims of tortious interference with contract (Count III) and tortious interference with business expectancy (Count IV) against Wells. Defendants have moved to dismiss all four counts insofar as they claim damages related to his pension benefits. Defendants first argue that plaintiff cannot recover lost pension benefits as damages because his claim is actually one for benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA"), which preempts the anti-discrimination laws to this extent. Similarly, defendants also argue that (a) plaintiff has failed to plead a *prima facie* case of discrimination in Counts I and II as it relates to pension benefits and these claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6); and (b) the same reasons that support dismissal of Counts I and II also support dismissal of Counts III and IV's claim for pension benefits.

As to defendants' first argument, ERISA states that it shall not be "construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d); *see Shaw* v. *Delta Air Lines, Inc.*, 462 U.S. 85, 108–09, 103 S. Ct. 2890 (1983). In their reply brief, defendants concede that they "have not found any case that has held that ERISA preempts . . . federal laws, including discrimination laws." (Reply at 1.) The court therefore declines to dismiss Counts I and II on ERISA preemption grounds.

As to defendants' second argument, plaintiff need only provide a "short and plain statement of the claim showing that [he] is entitled to relief" to survive a motion to dismiss. Fed. R. Civ. P. 8(a)(2). Contrary to defendants' position, plaintiff need not allege a *prima facie* case of discrimination in his complaint. *See*

**STATEMENT**

*Swierkiewicz* v. *Sorema*, *N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."), *overruled in part on other grounds by Bell Atl. Corp*. v. *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Swanson* v. *Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("The Supreme Court's explicit decision to reaffirm the validity of *Swierkiewicz* . . . , which was cited with approval in *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, indicates that in many straightforward cases, it will not be any more difficult today for a plaintiff to meet [Rule 8's pleading] burden than it was before the Court's recent decisions.").

The complaint alleges, *inter alia*, that defendants terminated plaintiff, CYC's only black management executive, after 30 years of distinguished service, and decreased his annual pension payment by 38 percent under the guise of "financial distress" when the agency in fact possessed substantial financial assets and was on track to have a breakeven year. Plaintiff further alleges that he was uniquely affected by the termination of CYC's pension plan and that CYC did not take steps to similarly reduce the pension benefits of white employees. These allegations are sufficient to plausibly suggest that defendants reduced plaintiff's pension benefits because of his race. *Cf. Swanson*, 614 F.3d at 404–05 ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case."). Defendants' motion to dismiss Counts I and II is therefore denied.

Although the court will not dismiss the claims relating to denial of pension benefits, plaintiff will have a significant task in establishing that the "but for" reason that CYC decided to terminate its pension obligations by seeking relief from Pension Benefit Guaranty Corporation ("PBGC") was to deprive plaintiff of his full pension rights because of his race. Conceding that both black and white employees were affected by the decision, plaintiff's theory of discrimination is that all other employees' benefits were under the PBGC's statutory maximum; thus he was the only non-white negatively affected by the decision. This would still mean that plaintiff would have to prove that other (white) executives' rights were treated more favorably by the termination. Plaintiff further would have to show that the stated reason, financial distress, was pretext. Since PBGC approved the plan's termination (Compl. ¶ 38), this may be difficult to establish.[2] Nonetheless, if the proof can be made, the damages in the form of the value of the lost pension funds would be the liability of CYC, not the PBGC or a subsequently-created pension fund. *See Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 253, 114 S. Ct. 1483 (1994) (monetary relief for a discriminatorily discharged employee generally includes lost fringe benefits such as pension benefits).

As to defendants' third argument, Counts III and IV allege that Wells intentionally interfered with plaintiff's contractual relationship with CYC and expectancy of continued employment with the same by causing CYC to terminate plaintiff's employment. (Compl. ¶¶ 72, 79.) In addition, Counts III and IV expressly incorporate the allegations contained in paragraphs 1–46 of the complaint, leaving some doubt as to whether Counts III and IV also relate to defendants' decision to terminate the plan. (Compl. ¶¶ 69, 76.) In his response brief, plaintiff acknowledges that Counts III and IV are based on state law but argues that they do not "relate to" CYC's pension plan and therefore are not preempted by section 514(a) of ERISA. *See* 29 U.S.C. § 1144(a) (stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) . . . .").

Defendants read plaintiff's argument to confirm that "he is not seeking any relief related to the pension claim in his tortious interference counts" and that he "concedes that his state law tortious interference claims are preempted by ERISA." (Reply at 1 & 3.). The court, however, understands plaintiff as saying that his claims for damages for tortious interference do not implicate ERISA law.[3] Neither side has cited relevant case

**STATEMENT**

authority discussing preemption of common law claims for damages measured by the value of lost pension benefits. *Compare Metro. Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 67, 107 S. Ct. 1542 (1987) (claim for recovery of lost pension and welfare benefits arising from wrongful termination was preempted by ERISA), *superseded by statute on other grounds*; *D'Ambrosio* v. *Chicago Truck Drivers, Helpers & Warehouse Workers (Indep.)*, 983 F.2d 1072 (table), 1992 WL 389940, at *2 (7th Cir. Dec. 28, 1992) (wrongful discharge suit claiming denial of various health, welfare and pension benefits was preempted by ERISA); *with Landgraf*, 511 U.S. at 253 (lost pension benefits recoverable under Title VII). Because the burden on a motion to dismiss rests with defendants, the court will deny their motion as to Counts III and IV without prejudice.[4]

---

1. Count I is alleged against CYC and Count II is alleged against Wells.

2. Attached to defendants' brief are three documents that were not attached to the complaint: CYC's Distress Termination Notice of Intent to Terminate dated March 24, 2011 (nearly three months before plaintiff's termination on June 30, 2011) (Ex. A); a letter from PBGC dated July 17, 2012 notifying CYC that it met the criteria for distress termination (Ex. B); and an agreement between PBGC and the United Way of Metropolitan Chicago Retirement Subcommittee for the Appointment of Trustee and Termination of Plan (Ex. C). These documents are referenced in the complaint and central to his claims and therefore properly considered on a motion to dismiss. *See* Compl. ¶¶ 33, 38; *188 LLC* v. *Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Defendants argue that these documents establish that the reduction in plaintiff's pension benefits was solely related to CYC's inability to pay its debts.

3. Indeed, in seeking leave to amend his complaint, plaintiff seeks to allege these same two tortious interference claims against Wells relying on largely the same allegations. (*See* Dkt. #21-1, Amended Compl., Counts X & XI.)

4. A more fundamental problem with the tortious interference counts is that Wells is the CEO of CYC. Tortious interference requires interference by the defendant with a contract between plaintiff and a third party, causing the third party to breach the contract. *See Wheel Masters, Inc.* v. *Jiffy Metal Prods. Co.*, 955 F.2d 1126, 1129 (7th Cir. 1992) (setting out elements). Here, plaintiff would have to prove that Wells's interference with CYC's contract caused CYC to fire plaintiff. But CYC, being the employer, has ratified Wells's conduct by firing plaintiff, rather than overruling Wells. *See Rice* v. *Nova Biomedical Corp.*, 38 F.3d 909, 911 (7th Cir. 1994):

> Were this plausible, one might expect [the employer] to be a coplaintiff rather than a codefendant, indignant at its employee's disloyal act in procuring the discharge of a fellow employee on entirely personal grounds, and wanting to place as much distance as possible between itself and [the defendant] to avoid the imposition of derivative liability on it for his wrongdoing. That is not [the employer]'s tack at all. [It] is not complaining that [plaintiff] has left its employ. It is content with the discharge. It has indeed ratified [defendant]'s act in firing [plaintiff], making it its own act, and as an employer at will it could fire [plaintiff] on any nonprivileged ground, even one as perverse as another employee's animosity to him.